IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
NORTHERN DIVISION
No. 2:10-CV-5-FL

PAULA FELTON-MILLER,                          )
                                              )
          Plaintiff/Claimant,                 )
                                              )
                                              )          **MEMORANDUM AND**
               v.                             )          **RECOMMENDATION**
                                              )
MICHAEL J. ASTRUE, Commissioner of            )
Social Security,                              )
                                              )
          Defendant.                          )

This matter is before the court on the parties' cross motions for judgment on the pleadings

pursuant to Fed. R. Civ. P. 12(c). Claimant Paula Felton-Miller ("Claimant") filed this action

pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3) seeking judicial review of the denial of her applications

for a period of disability, Disability Insurance Benefits ("DIB") and Supplemental Security Income

("SSI") payments. The time for filing responsive briefs has expired and the pending motions are ripe

for adjudication. Having carefully reviewed the administrative record and the motions and

memoranda submitted by the parties, this court recommends denying Claimant's Motion for

Judgment on the Pleadings, granting Defendant's Motion for Judgment on the Pleadings and

upholding the final decision of the Commissioner.

## STATEMENT OF THE CASE

Claimant filed an application for a period of disability, DIB and SSI on 10 July 2006 and 7

August 2006, respectively, alleging disability beginning 10 July 2006. (R. 129-139). Both claims

were denied initially and upon reconsideration. (R. 59-71). A hearing before the Administrative

Law Judge ("ALJ") was held on 25 February 2009, at which Claimant was represented by counsel

and a vocational expert ("VE") appeared and testified. (R. 26-58). On 18 March 2009, the ALJ issued a decision denying Claimant's request for benefits. (R. 12-25). On 19 January 2010, the Appeals Council denied Claimant's request for review. (R. 1-4). Claimant then filed a complaint in this court seeking review of the now final administrative decision.

## STANDARD OF REVIEW

The scope of judicial review of a final agency decision regarding disability benefits under the Social Security Act ("Act"), 42 U.S.C. § 301 *et seq.*, is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). While substantial evidence is not a "large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988), it is "more than a mere scintilla . . . and somewhat less than a preponderance." *Laws*, 368 F.2d at 642. "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the Secretary." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996)). Rather, in conducting the "substantial evidence" inquiry, the court's review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained his or her findings and rationale in crediting the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997).

2

## DISABILITY EVALUATION PROCESS

The disability determination is based on a five-step sequential evaluation process as set forth in 20 C.F.R. §§ 404.1520, 416.920 under which the ALJ is to evaluate a claim:

> The claimant (1) must not be engaged in "substantial gainful activity," i.e., currently working; and (2) must have a "severe" impairment that (3) meets or exceeds [in severity] the "listings" of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform . . . past work or (5) any other work.

*Albright v. Comm'r of the SSA*, 174 F.3d 473, 474 n.2 (4th Cir. 1999). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Id.* At the fifth step, the burden shifts to the ALJ to show that other work exists in the national economy which the claimant can perform. *Id.*

When assessing the severity of mental impairments, the ALJ must do so in accordance with the "special technique" described in 20 C.F.R. §§ 404.1520a(b)-(c) and 416.920a(b)-(c). This regulatory scheme identifies four broad functional areas in which the ALJ rates the degree of functional limitation resulting from a claimant's mental impairment(s): activities of daily living; social functioning; concentration, persistence or pace; and episodes of decompensation. *Id.* §§ 404.1520a(c)(3); 416.920a(c)(3). The ALJ is required to incorporate into his written decision pertinent findings and conclusions based on the "special technique." *Id.* §§ 404.1520a(e)(2), 416.920a(e)(2).

In this case, Claimant alleges the following errors by the ALJ: (1) failure to classify Claimant's eye impairments and trigeminal neuralgia as severe impairments; (2) failure to properly apply the special technique for mental impairments as mandated by 20 C.F.R. §§ 404.1520a,

3

416.920a; (3) improper credibility assessment and (4) failure to develop the record by not seeking a medical source opinion concerning Claimant's functional limitations.[1] Pl.'s Mem. Supp. Pl.'s Mot. J. Pleadings at 7, 9,12-13. ("Pl.'s Mem."). Claimant requests that the court set this matter for oral argument. Pl.'s Mem. at 18.

## FACTUAL HISTORY

### I.    ALJ's Findings

Applying the above-described sequential evaluation process, the ALJ found Claimant "not disabled" as defined in the Act. At step one, the ALJ found Claimant was no longer engaged in substantial gainful employment. (R. 17). Next, the ALJ determined Claimant had the following severe impairments: sarcoidosis, carpal tunnel syndrome, degenerative disc disease, vertigo and a depressive disorder. *Id.* However, at step three, the ALJ concluded these impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* In reviewing Claimant's alleged mental impairment and applying the technique prescribed by the regulations, the ALJ found that Claimant experiences mild difficulties in activities of daily living and in social functioning, moderate difficulties with respect to concentration, persistence or pace and has experienced no episodes of decompensation. (R. 18).

Prior to proceeding to step four, the ALJ assessed Claimant's RFC, finding Claimant had the ability to perform light work[2] but could not perform tasks requiring constant use of her hands,

---

[1] The court discusses the alleged assignments of error pursuant to the sequential evaluation process and not as presented by Claimant.

[2] Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this

4

exposure to workplace hazards such as unprotected heights or dangerous machinery, exposure to excessive dust, fumes, gases or other respiratory irritants or working at temperature extremes. (R. 19). The ALJ found further that Claimant has a decreased ability to concentrate on and attend to work tasks and as such, can perform only simple, routine and repetitive tasks. *Id.* In making this assessment, the ALJ found Claimant's statements about her limitations not fully credible. (R. 23). At step four, the ALJ concluded Claimant did not have the RFC to perform the requirements of her past relevant work. (R. 24). Nonetheless, at step five, upon considering Claimant's age, education, work experience and RFC, the ALJ determined Claimant is capable of adjusting to the demands of other employment opportunities that exist in significant numbers in the national economy. (R. 24).

## II.    Claimant's Testimony at the Administrative Hearing

At the time of Claimant's administrative hearing, Claimant was forty-three years old and unemployed. (R. 30-31). Claimant is a high school graduate. (R. 30). Claimant was last employed as a home health aide for approximately four years, where her duties included mopping, sweeping, dusting, bathing clients and preparing meals. (R. 31-32). Claimant's past work experience also includes employment as a customer service representative, cleaning service employee, cashier and stock clerk. (R. 32).

Claimant stated she is unable to work primarily because of the pain associated with sarcoidosis. (R. 35). In particular, Claimant experiences joint, neck, arm and foot pain and swelling

---

category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If an individual can perform light work, he or she can also perform sedentary work, unless there are additional limiting factors such as the loss of fine dexterity or the inability to sit for long periods of time. 20 C.F.R. §§ 404.1567(b), 416.967(b).

5

in her hands and fingers. (R. 35, 51). Claimant stated the pain is constant and leaves her with no energy. (R. 35, 40, 52). Claimant requires a symbicort inhaler as she experiences shortness of breath associated with sarcoidosis. (R. 40). Claimant stated exertion and heat cause breathing difficulties. (R. 40). Claimant complained also of vertigo, numbness and tingling in both arms, depression and pain in the middle section of the back of her neck which she attributed to protruding bones in her neck. (R. 36-38, 44-45). Claimant elevates her neck at night to alleviate the pain. (R. 11). Claimant experiences dizziness when standing or turning quickly and she loses her balance three to four times a day. (R. 39, 44). Claimant's arm pain, tingling and numbness occur primarily at night or when she lays down. (R. 45).

Claimant began experiencing depression in 2006; however, she did not seek medical treatment until 2008. (R. 34, 37, 47). Claimant is presently receiving treatment for generalized anxiety disorder, obsessive compulsive disorder and depressive order not otherwise specified ("NOS"). (R. 47). Claimant stated her depression causes her to withdraw and she generally leaves her home for doctor appointments, grocery shopping and church only. (R. 38).

Treatment has consisted of medication, which ease but do not alleviate the pain, and a right wrist brace. (R. 36-37). Claimant experiences no side effects from her medications. (R. 35). Claimant testified that she lays down three times a day for one to two hours total for pain relief. (R. 41, 52). Claimant can walk or stand for fifteen to twenty minutes and can sit for ten to thirty minutes. (R. 42). Claimant testified that the doctor who performed her hernia surgery in 2001 limited Claimant to lifting no more than fifteen pounds. (R. 42-43). Claimant stated, however, that lifting more than ten pounds worsens her pain. (R. 43). With regard to activities, Claimant performs all of her household chores, including cooking, cleaning and grocery shopping, with the

6

exception of vacuuming, in intervals due to her sitting, standing and walking limitations. (R. 43, 50). Upon her doctor's advice, Claimant tries to exercise. (R. 41). Claimant reads the bible and the newspaper "from time to time" and drives twice a week. (R. 30).

### III.    Vocational Expert's Testimony at the Administrative Hearing

Julie Sawyer-Little testified as a VE at the administrative hearing. (R. 53-57). After the VE's testimony regarding Claimant's past work experience (R. 53), the ALJ asked the VE whether any jobs would be available for a hypothetical individual of the same age, education and work background as that of the claimant who is limited to light work and simple, routine and repetitive tasks but who must avoid jobs requiring constant use of the hands like keyboarding, exposure to hazards, working in unprotected heights and around dangerous moving machinery, excessive dust, fumes, gases and similar pulmonary irritants and extreme temperatures. (R. 54). The VE testified that the hypothetical individual could perform Claimant's past work as a cashier II (DOT 211.462.010) and could also perform jobs as an office helper (DOT 239.567.010; specific vocational preparation ("SVP") time of 2; 1000 to 2000 positions locally; 100,000 nationally), photocopy machine operator (DOT 207.685-014; SVP 2; 1,000 to 2,000 locally; 50,000 to 100,000 nationally) and marker (DOT 209.587.034; SVP 2, 1,000 locally and 50,000 to 100,000 nationally). However, the VE explained that the office helper position may be impacted if an individual experiences neck movement limitations. (R. 57).

When asked to consider a hypothetical individual limited to sitting, walking and standing in fifteen minute increments and the need to lie down for pain relief intermittently throughout the day for a total of two hours, the VE testified there would be no positions available. (R. 54-55). Upon questioning by Claimant's counsel, the VE clarified that positions enumerated would be available

if the individual needed to change positions every thirty minutes. (R. 56). The VE clarified further that if an individual requires unscheduled breaks outside of those normally provided in a work setting, competitive employment would be precluded. (R. 56). Lastly, the VE testified that competitive employment could not be maintained if an individual is missing more than one to two days per month on a consistent basis. (R. 57).

## DISCUSSION

**I.      The ALJ's severity determination is supported by the record.**

Claimant contends the ALJ erred in failing to classify Claimant's eye impairments and trigeminal neuralgia as severe impairments. Pl.'s Mem. at 12. In particular, Claimant faults the ALJ for not taking into account any medical evidence as to these impairments generated after January 2007.

The court notes initially that Claimant did not testify to these impairments during the administrative hearing and her testimony provides no insight as to how these conditions may impact her ability to work. In fact, during the hearing, the ALJ asked Claimant to identify all impairments affecting her ability to work, which elicited initially only the following complaints: (1) sarcoidosis and the pain associated therewith; (2) neck pain; and (3) depression. (R. 35-37). Claimant testified further to having no other medical problems or symptoms affecting to her ability to work. (R. 38). Upon further questioning by both the ALJ and Claimant's counsel, however, Claimant subsequently mentioned vertigo and carpal tunnel syndrome. However, Claimant's counsel did not inquire about vision difficulties and Claimant did not testify to any such problems. In fact, Claimant testified that she read the bible and the newspaper "from time to time" without further comment. (R. 30).

The court notes further the lack of evidence in the record indicating that these conditions in

8

fact affect Claimant's ability to work and Claimant cites none. *See Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) (explaining "[t]he mere diagnosis . . . says nothing about the severity of the condition"). In fact, Claimant's argument is essentially that the ALJ failed to explicitly mention all assessments and notations regarding Claimant's eye. In his severity discussion, the ALJ acknowledged Claimant's history of uveitis related to sarcoidosis, her "early cataract" and that Claimant is seen by Gayle Rutherford, M.D., and Marshall Redding, M.D., for vision issues. (R. 17, 291-325, 395-427). The ALJ noted Claimant had not experienced any recurrent episodes of uveitis since 1995. (R. 17). The ALJ also referenced changes in Claimant's visual acuity as indicated in Dr. Rutherford's progress notes over the period of August 2004 through January 2007, noting a range of 20/20 bilaterally to 20/50[3] in the left eye and 20/25 in the right eye, with full visual fields. (R. 17, 293, 296, 298, 300, 302, 304, 306, 308, 310, 312, 314).

Claimant however notes first that while the ALJ referenced the visual acuity findings in Dr. Rutherford's 2 January 2007 progress note, the ALJ failed to note that Claimant had an increase in "Mac REP∆." Pl.'s Mem. at 12; (R. 17, 314). The significance of this finding is not explained by Claimant nor does Claimant provide an explanation as to how this finding affects her ability to work. Moreover, despite Claimant's implication to the contrary, an ALJ is not required to discuss all physical observations. *See White v. Astrue*, No. 2:08-CV-20-FL, 2009 U.S. Dist. LEXIS 60309, at *11-12, 2009 WL 2135081, at *4 (E.D.N.C. July 15, 2009) ("To require an ALJ to refer to every physical observation recorded regarding a Social Security claimant in evaluating that claimant's . . . alleged condition[s] would create an impracticable standard for agency review, and one out of

---

[3] The ALJ mistakenly noted Claimant's left eye visual acuity as 20/50; however, the record indicates a left eye visual acuity reading of 20/30. (R. 17)

9

keeping with the law of this circuit."). Next, Claimant faults the ALJ for failing to acknowledge a comment included in a letter dated 23 January 2008 written by Jasvinder P. Singh, M.D., a pulmonary physician, which references in passing that Claimant "has some eye problems secondary to her sarcoidosis . . . ." (R. 444). This fact is reflected in the ALJ's statement that Claimant "has a history of uveitis related to her sarcoidosis." (R. 17). Finally, Claimant faults the ALJ for failing to acknowledge assessments of trigeminal neuralgia and orbital pseudotumor, and contends the complaints of blurry vision indicate a return of sarcoid uveitis. While the above assessments and complaints are referenced in Dr. Rutherford's progress notes, there is no indication of any resulting limitations or subsequent treatment and Claimant has failed to explain how this diagnoses affect her ability to work. *See Higgs*, 880 F.2d at 863.

The ALJ has no duty to consider an impairment absent an allegation by the claimant of such impairment and record evidence of a resultant limitation or restriction. *See* S.S.R. 96-8p, 1996 SSR LEXIS 5, at *8, 1996 WL 374184, at *3 (July 2, 1996) ("[W]hen there is no allegation of a . . . limitation or restriction of a specific functional capacity, and no information in the case record that there is such a limitation or restriction, the adjudicator must consider the individual to have no limitation or restriction with respect to that functional capacity."); *see also Humphrey v. Barnhart*, No. 1:02cv32-T, 2002 U.S. Dist. LEXIS 16659, at *7, 2002 WL 31129679, *3 (W.D.N.C. Aug. 29, 2002) ("The ALJ is obligated to consider only those limitations or restrictions which are alleged and/or based upon relevant evidence."). "Although the ALJ has a duty to explore all relevant facts and inquire into the issues necessary for adequate development of the record, . . .[the ALJ] is not required to function as the claimant's substitute counsel . . . ." *Bell v. Chater*, No. 95-1089, 1995 U.S. App. LEXIS 14322, at *12, 1995 WL 347142, at *4 (4th Cir. Jun. 9, 1995) (unpublished table

10

decision) (citing *Clark v. Shalala*, 28 F.3d 828, 830-831 (8th Cir. 1994)) (internal citations and quotations omitted). Ultimately, Claimant carries the burden of establishing a prima facie entitlement to benefits and bears the risk of nonpersuasion. *Id.* (internal citations and quotations omitted); *see also* 20 C.F.R. §§ 404.1512(c), 416.912(c) ("[Claimant] must provide evidence . . . showing how the impairment(s) affects . . . functioning . . . ."). Accordingly, having failed to carry her burden, Claimant's argument as to this issue is without merit.

## II. The ALJ did not fail to apply the special technique for mental impairments in accordance with 20 C.F.R. §§ 404.1520a, 416.920a.

Claimant contends the Commissioner failed to apply the special technique at each or any level of the administrative review process in violation of 20 C.F.R. §§ 404.1520a(e)(2), 416.920a(e)(2). Pl.'s Mem. at 13. When there is evidence of a mental impairment that allegedly prevents a claimant from working, the Commissioner must follow the "special technique" for evaluating mental impairments set forth in 20 C.F.R. §§ 404.1520a, 416.920a. *See Newton v. Astrue*, 559 F. Supp. 2d 662, 667 (E.D.N.C. 2008). The required analysis entails rating the degree of a claimant's functional limitation in four broad areas: (1) activities of daily living; (2) social functioning; (3) concentration, persistence or pace; and (4) episodes of decompensation. 20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3). The first three functional areas are rated on a five-point scale: none, mild, moderate, marked and extreme. *Id.* §§ 404.1520a(c)(4), 416.920a(c)(4). A four-point scale is used to rate the fourth functional area: none, one or two, three, and four or more. *Id.* The last point on each scale represents a degree of limitation that is incompatible with the ability to do any gainful activity. *Id.*

First, Claimant contends the Commissioner failed to assess Claimant's mental impairment at the initial and reconsideration levels of the administrative review process. Specifically, Claimant

faults the Commissioner for failing to complete a Psychiatric Review Technique Form ("PRTF").[4] *See* 20 C.F.R. §§ 404.1520a(e), 416.920a(e) ("At the initial and reconsideration levels of the administrative review process, [the Commissioner] will complete a standard document to record how we applied the [special] technique."). Claimant's argument is without merit given the Commissioner was not faced with evidence of a mental impairment in the record during the initial review or reconsideration of Claimant's claim. In Claimant's initial disability report, dated 7 August 2006, Claimant listed only swelling, joint pain, arthritis and sarcoidosis. (R. 157). When asked in two follow-up reports, completed in 2006 and 2007, whether she had any new physical or mental limitations affecting her ability to work, Claimant responded in the negative. (R. 185, 195). Furthermore, the court has found no evidence of a mental impairment in existence during the initial review and reconsideration of Claimant's claim and Claimant points to none. Indeed, allegations of a mental impairment do not appear in the record until 11 June 2008 - over one year after the Commissioner denied reconsideration of Claimant's claims. (R. 75, 79). Accordingly, the Commissioner was not under an obligation to apply the special technique to assess an impairment of which there was no allegation or evidence.

Second, Claimant faults the ALJ for failing to give proper consideration to Claimant's mental impairments and in particular, for stating his findings regarding the special technique "in the most cursory fashion." Pl.'s Mem. at 14. However, the court finds that the ALJ correctly evaluated Claimant's mental status and followed the specific guidelines required. As conceded by Claimant, the ALJ listed the four criteria necessary to evaluate a mental impairment pursuant to 20 C.F.R. §§

---

[4] The PRTF follows the special technique for evaluating mental impairments found in 20 C.F.R. §§ 404.1520a, 416.920a.

12

404.1520a(c)(3), 416.920a(c)(3). (R. 21); *see* Pl.'s Mem. at 14. In particular, the ALJ found Claimant experienced mild difficulties in activities of daily living and in social functioning, moderate difficulties with respect to concentration, persistence or pace and has experienced no episodes of decompensation. (R. 18).

The ALJ provided additional discussion of the relevant evidence and testimony pursuant to 20 C.F.R. §§ 404.1520a(e)(2), 416.920a(e)(2). In particular, the ALJ's decision provides the following summary of findings and observations by Kim Manlay, a licensed social worker, and Hunter Thompson, M.D., both with Health Services Personnel:

> On June 11, 2008, [Claimant] . . . reported having a history of such depressive symptoms as anhedonia, withdrawal, and social isolation. She also said that she was an obsessive cleaner. On mental status examination, her mood was anxious but her affect was appropriate and her memory functioning was intact. She did not have any abnormality in her thought processes. She was initially diagnosed with a generalized anxiety disorder, an obsessive-compulsive disorder, and a depressive disorder not otherwise specified. However, in July, 2008, the diagnosis was changed to a major depressive disorder. The claimant's initial global assessment function (GAF) rating was 42 indicating severe impairment of function. However, her GAF was raised to 52 in July, 2008 indicating only moderate impairment of function. She was prescribed treatment with zoloft and lexapro and she responded well to treatment. When she was seen in follow-up on February, 2009, it was reported that her mood was euthymic and her thinking was clear. She was described as doing well and stable.

(R. 22, 472-89).

Finally, Claimant contends the ALJ was obligated to employ the assistance of a medical expert in making an initial determination of mental impairment. *See* Pl.'s Mem. at 15 (stating "because the ALJ . . . answered a key medical question on his own, without the guidance of *medical* expertise, the Commissioner did not apply the special technique at *any* level) (emphasis in original). Claimant acknowledges her argument is in direct contradiction with *Kennedy v. Astrue*, No.

13

5:08-CV-11-FL, 2009 U.S. Dist. LEXIS 17862, 2009 WL 605315 (E.D.N.C. Mar. 9, 2009), in which this court held that at the ALJ level, the regulations demand only that the special technique be performed, not that the special technique be performed by a medical expert or psychologist.

Despite Claimant's contention to the contrary, an ALJ facing evidence of a mental impairment is afforded some flexibility when making an initial determination of mental impairment. At the initial and reconsideration stages, pursuant to 42 U.S.C. § 421(h), when the record contains evidence of a mental impairment, a determination as to disability "shall be made only if the Commissioner [] has made every reasonable effort to ensure that a qualified psychiatrist or psychologist has completed the medical portion of the case review and any applicable residual functional capacity assessment." However, as some courts have held explicitly and the district court in *Kennedy* recognized implicitly, "[b]ecause 42 U.S.C. § 421(d), which covers hearings before an ALJ, is excluded from § 421(h)'s purview, an ALJ is not required to employ the assistance of a qualified psychiatrist or psychologist in making an initial determination of mental impairment." *Plummer v. Apfel*, 186 F.3d 422, 433 (3d Cir. 1999); *see Harris v. Astrue*, No. CV 06-7309-RC, 2008 U.S. Dist. LEXIS 75748, at *15 n.10, 2008 WL 2852248, at *4 n.10 (C.D. Cal. July 23, 2008) (explaining "Section 421(h) does not apply to administrative hearings before ALJs") (citation omitted); *accord Kennedy*, 2009 U.S. Dist. LEXIS 17862, at *7-8, 2009 WL 605315, at *3 (explaining the clause "'if the [ALJ] requires the services of a medical expert to assist in applying the [special] technique' necessarily contemplates that in some circumstances, an ALJ will not require the medical expert's services") (quoting 20 C.F.R. § 404.1520a(e)(3)). Accordingly, when evaluating an alleged mental impairment, an ALJ is entitled "to remand for further review, [] proceed with a determination without the assistance of a medical adviser, or [] call a medical adviser for assistance

14

with the case." *Plummer*, 186 F.3d at 433; *see also* 20 C.F.R. §§ 404.1520a(e)(1)-(3), 416.920a(e)(1)-(3).

In this case, the ALJ chose to proceed without a mental health expert and instead performed the evaluation based on Claimant's testimony and progress notes from Ms. Manlay and Dr. Thompson. The ALJ clearly gave Claimant's mental impairment the serious consideration required by SSA regulations and procedures and in fact, found them severe enough to limit Claimant to work involving only simple, routine and repetitive tasks. (R. 19-20, 22). The court finds that the ALJ satisfied his burden under SSA regulations to "document application of the [special] technique in the decision" and "the significant history, including examination [] findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment." 20 C.F.R. §§ 404.1520a(e)(2),(3), 416.920a(e)(2),(3). Accordingly, the court finds Claimant's objection to the ALJ's failure to consult a psychiatric expert without merit.

**III.    The ALJ properly assessed Claimant's credibility.**

Claimant contends the ALJ's rationale for rejecting Claimant's pain testimony was not based on substantial evidence. Pl.'s Mem. at 7.

Federal regulations, 20 C.F.R. §§ 416.929(a) and 404.1529(a), provide the authoritative standard for the evaluation of subjective complaints of pain and symptomology. *See Craig*, 76 F.3d at 593. Under these regulations, "the determination of whether a person is disabled by pain or other symptoms is a two-step process." *Id.* at 594. First, as an objective matter, the ALJ must determine whether Claimant has a medical impairment which could reasonably be expected to produce the pain or other symptoms alleged. *Id.*; *see also* S.S.R. 96-7p, 1996 SSR LEXIS 4, at *5, 1996 WL 374186, at *2. If this threshold question is satisfied, then the ALJ evaluates the actual intensity and

15

persistence of that pain, and the extent to which it affects a claimant's ability to work. *Id.* at 595. The step two inquiry considers "all available evidence," including a claimant's statements about his pain, medical history, medical signs, laboratory findings, any objective medical evidence of pain, evidence of a claimant's daily activities, specific descriptions of pain, any medical treatment taken to alleviate the pain and "any other evidence relevant to the severity of the impairment." *Id.*; *see also* 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); S.S.R. 96-7p, 1996 SSR LEXIS 4, at *6, 1996 WL 374186, at *3. Objective evidence of pain is not required for entitlement to benefits, although it is appropriately considered where it appears in the record. *See id.* at 595-96.

By all accounts, the ALJ performed this analysis as prescribed. (R. 20, 23). Claimant does not contend otherwise but complains that the reasons for discrediting Claimant's subjective complaints were not substantial and, in some instances, simply inaccurate. First, Claimant describes as "unsustainable" the ALJ's finding that Claimant's sarcoidosis has been well-controlled with various medication regimens, including periodic use of prednisone, plaquenil and methotrexate, and in fact, contends the ALJ failed to cite any evidence in support of his finding. Pl.'s Mem. at 7-8. To the contrary, however, the ALJ cited several references, both before and after the alleged date of onset of her disability, 10 July 2006. In particular, the ALJ cited the following evidence: (1) Claimant's relapses of sarcoidosis in 2000 and 2004 which were successfully treated with prednisone (R. 260); (2) complaints of symptoms related to sarcoidosis in October 2005 and the resolution of those symptoms with prednisone (R. 363, 375); (3) complaints of joint pain and stiffness in July 2008 followed by Claimant's report on 8 September 2008 that she was feeling better after being prescribed plaquenil and methotrexate (R. 437, 439); and (4) examinations in November 2008, January 2009 and February 2009 revealing no signs of synovitis, inflammation, deformity of the

16

digits of the hands or feet or tenderness of the joints of the extremities and normal neurological findings with full motor strength (R. 449-50). (R. 20-21).

In a further attempt to refute the ALJ's finding that Claimant's sarcoidosis has been well-controlled with medication, Claimant selects a few excerpts from the medical record, and in particular, an April 2006 report attributing Claimant's gastrointestinal problems to plaquenil (R. 260) and an October 2006 progress report wherein Geeta Katwa, M.D., noted that prednisone was not controlling Claimant's symptoms (R. 383). Pl.'s Mem. at 8. The court notes first that in discussing sarcoidosis, the ALJ acknowledged specifically the October 2006 progress report, noting Claimant "was put back on" plaquenil and also prescribed naprosyn. (R. 21). Furthermore, these records actually support the ALJ's finding that "various medication regimens" were required to treat Claimant's sarcoidosis. Indeed, the October 2006 report indicates plaquenil was an effective medication despite Claimant's earlier allergic reaction thereto. It is evident that the ALJ's finding that Claimant's sarcoidosis has been well-controlled with various medication regimens is supported by substantial evidence.

Second, Claimant objects to the ALJ's finding that Claimant "has not had clinical signs of persistent joint inflammation and she does not have joint deformity or limitation of joint motion." Pl.'s Mem. at 8; (R. 23). In support of her argument, Claimant cites the following evidence: (1) an April 2005 progress note listing "inflammatory arthritis involving the hands" as a medical impression (R. 324); (2) an August 2005 progress report noting an increase in joint pain (R. 304); (3) an August 2006 progress report noting joint stiffness (R. 261, 372); (4) a 23 May 2006 progress report listing pelvic inflammatory disease as an assessment (R. 468); (5) an October 2006 examination by Dr. Katwa revealing exquisite tenderness in the left lateral epicondyle (R. 383); and (6) a March 2007

17

progress report indicating edema (R. 466). Pl.'s Mem. at 8. However, Claimant does not explain how this evidence, the majority of which was acknowledged by the ALJ, contradicts the ALJ's finding. Indeed, Dr. Katwa's findings in October 2006 progress report indicate that Claimant had a good range of motion at the shoulders, elbows and wrist joints, had no swelling of her hand joints and had only a "very subtle swelling of a couple of toes on the bilateral feet" (R. 383) and examinations of Claimant in 2008 and 2009 revealed no signs of inflammation, joint deformity or limitations in motion. (448-50; 471). While evidence exists in the record of periodic swelling of her joints, which the ALJ acknowledged (R. 20-21), much of the evidence also supports the ALJ's finding that joint inflammation was *not persistent*. *See Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996) (explaining it is the role of the ALJ, and not reviewing courts, to resolve conflicts in the evidence).

Next, Claimant contends that the ALJ's description of Claimant's carpal tunnel syndrome as mild, while "correct," "does not undermine [Claimant's] other complaints of pain." Claimant provides no further argument. In considering whether a claimant's symptoms, including pain, affect her ability to work, the ALJ must consider all the evidence. Here, Claimant complained of arm pain, tingling and numbness. In evaluating the credibility of Claimant's testimony regarding these symptoms, the ALJ properly considered documentation of Claimant's carpal tunnel syndrome, and in particular, the lack of evidence indicating persistent signs of inflammation or any focal neurological deficits. The ALJ obviously deemed Claimant's testimony credible to a certain degree in light of the finding that Claimant is not capable of performing tasks requiring constant use of her hands. (R. 19).

Finally, Claimant contends the ALJ's identification of Claimant's degenerative disc disease

18

("DDD") as a severe impairment at step two of the sequential evaluation process contradicts the ALJ's description of Claimant's DDD as "mild." Pl.'s Mem. at 9. Claimant contends further that this description is contradicted by a 26 September 2008 medical record by Kimkya Asika, M.D., Claimant's primary care physician, noting that Claimant has a history of cervical radiculopathy secondary to severe degenerative joint disease/degenerative disc disease. Pl.'s Mem. at 9; (R. 461).

Claimant implies that a step two severity finding prevents a later characterization of the "severe" impairment as mild. An impairment is "severe" unless it "has such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." *Evans v. Heckler*, 734 F.2d 1012, 1014 (4th Cir. 1984). That is, the "severity standard is a slight one." *Stemple v. Astrue*, 475 F. Supp. 2d 527, 536 (D. Md. 2007); *see also McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986) (describing the burden of proving the severity of an impairment as "mild" and stating "only claims based on the most trivial impairments" are rejected). Accordingly, there is no contradiction in classifying an impairment as "severe" but determining that symptoms associated therewith are mild based on the overall record. *See e.g., Gilliland v. Astrue*, No. 1:09cv198, 2010 U.S. Dist. LEXIS 96639, at *5, *10-11, 2010 WL 3420239, at *2, *4 (W.D.N.C. Aug. 4, 2010) (upholding the ALJ's credibility finding regarding symptoms associated with numerous "severe" impairments, including "mild degenerative disc disease"); *Foreman v. Astrue*, No. 8:09-CV-00932-T-24AEP, 2010 U.S. Dist. LEXIS 85443, at *3, *10, 2010 WL 3292810, at *1, *4 (M.D. Fla. Aug. 3, 2010) (upholding the ALJ's evaluation of claimant's complaints of pain associated with numerous "severe" impairments including claimant's "mild degenerative disc disease" and "mild facet disease of the lumbar spine").

The credibility evaluation requires the ALJ to determine the degree to which a claimant's

19

statements regarding symptoms and their functional effects can be believed and accepted as true; thus, the ALJ must consider conflicts between a claimant's statements and the rest of the evidence. 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4); *see also* S.S.R. 96-7p, 1996 SSR LEXIS 4, at*6, 1996 WL 374186, at *4. A claimant's symptoms, including pain, are considered to diminish her capacity to work to the extent that alleged functional limitations are reasonably consistent with objective medical evidence and other evidence. *Id.* Here, the ALJ found Claimant's testimony regarding pain not entirely credible when viewed in light of the record and in support of this finding, noted that physical examinations revealed no neurological deficits indicating nerve root compression, the lack of aggressive measures for symptom relief such as steroid medication, epidural injections, applications of TENS equipment or enrollment in physical therapy or a pain management program and no evidence of surgical recommendation. (R. 23). The ALJ noted further the "lack of any evidence of a change in motor tone or bulk such as disuse atrophy or other change in body habitus or constitutional appearance . . . which might be expected in a person whose activities are markedly restricted due to a debilitating disease process." (R. 23). As for Claimant's reliance on Dr. Asika's characterization of Claimant's DDD as "severe," the court notes Claimant provides no insight as to how this characterization affects the ALJ's credibility finding. In fact, Claimant admits that "Dr. Askika may or may not have been correct" about the severity of Claimant's DDD. Pl.'s Mem. at 9. Rather, it appears Claimant is asking the court to reweigh the evidence in light of this one medical finding. The court's duty, however, is to determine if substantial evidence supports the ALJ's conclusion. *See Mastro*, 270 F.3d at 176. Here, the evidence provides sufficient grounds for the ALJ's conclusion that Claimant's subjective account of her limitations, including those associated with back pain, was inconsistent with available objective evidence.

20

The ALJ properly evaluated Claimant's subjective accounts of her symptoms with the objective medical evidence presented and did not err in finding that Claimant's statements were not entirely credible. Moreover, his decision that Claimant can perform only light exertional activities, despite two state agency physical RFC assessments indicating Claimant was capable of medium exertion (R. 332-39, 428-35), reflects the weight and credibility he afforded Claimant's subjective statements about her symptoms. (R. 23). The evidence provides sufficient grounds for the ALJ's conclusion that Claimant's subjective account of her limitations was inconsistent in part with available objective evidence. In short, the ALJ comported fully with the credibility evaluation prescribed by Social Security Ruling 96-7p by making findings, supported by reasons, with respect to Claimant's alleged symptoms, the medical record and Claimant's own testimony. *See Mickles v. Shalala*, 29 F.3d 918, 929 (4th Cir. 1994) ("Subject only to the substantial evidence requirement, it is the province of the [ALJ], and not the courts, to make credibility determinations."). For the foregoing reasons, Claimant's credibility argument is without merit.

**IV.    The ALJ properly developed the record.**

Finally, Claimant contends the ALJ failed to develop the record. In particular, citing *Smith v. Barnhart*, 395 F. Supp. 2d 298 (E.D.N.C. 2005), Claimant contends the ALJ failed to obtain a medical opinion or at the very least, a medical summary, from a treating physician. Pl.'s Mem. at 10. As such, Claimant avers that the ALJ 's RFC determination is not supported by substantial evidence since "the ALJ is not qualified to assess residual functional capacity based on a bare medical record." *Id.* (quoting *Gordils v. Sec'y of Health & Human Serv.*, 921 F.2d 327 (1st Cir. 1990)). Alternatively, Claimant argues that a medical source opinion was required in this case because "[m]uch of the 300-page medical record - particularly that supplied by Dr. Asika and Dr.

21

Rutherford - is hand-written and illegible;" thus, the "medical meaning and significance for a disability determination is [] obscure." Pl.'s Mem. at 11.

The ALJ has a duty to explore all relevant facts and inquire into issues necessary for adequate development of the record, and cannot rely on the evidence submitted by the claimant when that evidence is inadequate. *Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir. 1986). This duty includes developing the claimant's "complete medical history." 20 C.F.R. §§ 404.1512(d), 416.912(d). Where a claimant's medical records are "inadequate" thereby preventing the ALJ from rendering a disability determination, the ALJ must seek additional records and is obligated to contact claimant's treating physicians "and seek additional evidence or clarification" therefrom. 20 C.F.R. §§ 404.1512(e)(1), 416.912(e)(1). The Fourth Circuit has held that "[w]here the ALJ fails in his duty to fully inquire into the issues necessary for adequate development of the record, and such failure is prejudicial to the claimant, the case should be remanded." *Marsh v. Harris*, 632 F.2d 296, 300 (4th Cir. 1980) (citations omitted). Prejudice results where the Commissioner's decision "might reasonably have been different had that evidence been before him when his decision was rendered." *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979); *see also Stahl v. Astrue*, No. 2:07-CV-19, 2008 U.S. Dist. LEXIS 49343, 2008 WL 2565895, at *6 (N.D. W. Va. Jun. 26, 2008) (citing *Smith*, 395 F. Supp. 2d at 305).

Claimant cites *Smith* for the proposition that the court must remand the case if the administrative record does not contain medical expert opinions. Pl.'s Mem. at 10. Claimant notes that in *Smith*, the court explained that "obtaining medical opinion evidence is a significant part of the Commissioner's duty to develop the claimant's 'complete' medical history." 395 F. Supp. 2d at 303. However, upon considering the entire decision, this court does not read *Smith* to stand for such

22

rigid a proposition but rather identifies the duty of care to which a *pro se* claimant is entitled.[5]  In

*Smith*, that duty included recognizing that the claimant "was less than familiar with the contents of

[her administrative] record," explaining to the claimant "that no formal medical opinions had been

provided by her treating physicians, [and] advis[ing] her of the advantageousness of having such

opinions, or provid[ing] her with the opportunity to obtain and submit her doctor's opinion herself."

395 F. Supp. 2d at 305. Moreover, in *Smith*, the ALJ relied on an incomplete record, despite

knowledge of the claimant's medical treatment subsequent to the filing of her claim.  *See id.*

("Although [the plaintiff's] medical file was over a year old by the time of her hearing date, the ALJ

. . . failed to develop the record by asking plaintiff about the nature of the ongoing care or whether

plaintiff's treating physicians might have anything to add to the administrative record."). Here,

Claimant is represented by the same counsel who represented her at the administrative hearing.

Also, there is no allegation of missing treatment notes and in fact, the ALJ discussed medical records

dated through February 2009, issuing his decision just one month later. (R. 22, 25). Moreover, after

receiving the record into evidence at the beginning of the hearing, the ALJ inquired of Claimant's

present counsel as to whether any additional evidence was needed to which counsel responded in the

negative.  (R. 29); *see Hawkins v. Chater*, 113 F.3d 1162, 1167 (10th Cir. 1997) ("[W]hen the

---

[5] The regulations support this reading of *Smith*, as "complete medical history" is defined as "the
records of [a claimant's] medical source(s) covering at least the 12 months preceding the month in
which [a claimant] files [her] application" - not securing for each and every case an opinion from a
treating physician.  20 C.F.R. §§ 404.1512(d)(2), 416.912(d)(2).  When such records are inadequate
for the Commissioner to determine whether a claimant is disabled, the Commissioner must then
"seek additional evidence or clarification from [the claimant's] medical source when [a] report . . .
contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary
information, or does not appear to be based on medically acceptable clinical and laboratory
diagnostic techniques."  The Commissioner seeks this additional information "by requesting copies
of [a claimant's] medical source's records, a new report, or a more detailed report from your medical
source, including your treating source . . . ."  *Id.*  §§ 404.1512(e)(1), 416.912(e)(1).

claimant is represented by counsel at the administrative hearing, the ALJ should ordinarily be entitled to rely on the claimant's counsel to structure and present claimant's case in a way that the claimant's claims are adequately explored.").

Additionally, Claimant has failed to demonstrate how a medical opinion from Claimant's treating sources might reasonably have changed the ALJ's determination. *See Smith*, 395 F. Supp. 2d at 305 (the claimant proffered to the court an actual report from the doctor in question); *see also Stahl v. Astrue*, 2007 U.S. Dist. LEXIS 99446, at \*16, 2008 WL 2565895, at \*6 (where, citing *Smith*, the court found that represented claimant failed to demonstrate how an "updated" medical opinion may have reasonably changed the ALJ's determination). As one court observed, the ALJ is not

> precluded from rendering common-sense judgments about functional capacity based on medical findings, as long as the [ALJ] does not overstep the bounds of a lay person's competence and render a medical judgment. . . . [I]f the only medical findings in the record *suggested that a claimant exhibited little in the way of physical impairments*, but nowhere in the record did any physician state in functional terms that the claimant had the exertional capacity to meet the requirements of sedentary work, the *ALJ would be permitted to reach that functional conclusion himself.*

*Gordils*, 921 F.2d at 329 (emphasis added). In the instant case, Claimant's treating physicians provide no express functional conclusions but objective evidence includes the following: (1) a follow-up of sarcoidosis in April 2006 which revealed a normal physical examination (R. 375); (2) an October 2006 examination which revealed a full range of motion of all joints and a decrease in the left grip strength, rated 4/5 (R. 383); (3) a November 2008 examination for neck and arm pain which revealed full motor strength for bilateral upper and lower extremities (R. 449-50); (4) a June 2008 examination for depression indicating Claimant's mood was anxious but her affect was appropriate and her memory functioning was intact; and (5) a February 2009 examination for depression revealing Claimant's clinical condition was stable, her mood euthymic, her thinking clear

24

with positive thoughts and no depression or reports of significant anxiety (R. 486). (R. 21-22). The court finds the ALJ was justified in treating these findings, in addition to the evidence mentioned in the credibility discussion above, for the conclusion that Claimant retained the RFC to meet the exertional requirements of a light work. *See* 20 C.F.R. §§ 404.1527(e)(2), 416.927(e)(2) (explaining opinions on some issues, such a claimant's RFC, are not medical opinions "but are, instead, opinions on issues reserved to the Commissioner . . . . "). Consequently, these medical records together constitute substantial evidence to support the ALJ's RFC finding. *See Gordils*, 921 F.2d at 329. Finally, the court observes Claimant and her counsel presumably had the opportunity to submit additional documentation to the court for consideration as new and material evidence, including a medical opinion.

In the alternative, Claimant contends the ALJ erred in failing to obtain a RFC assessment from a medical expert as this case is "simply too complex for a mere layman to decide on his own." Pl.'s Mem. at 11. As evidence of complexity, Claimant avers documentation supplied by Drs. Asika and Rutherford was illegible; thus, the significance of this evidence is "obscure." Pl.'s Mem. at 11. First, the medical records fail to suggest any complex medical problem which was not readily understandable by the ALJ. Next, the ALJ extensively reviewed Claimant's medical records from 2005 through 2009 and specifically acknowledged findings from most of these records, including those by Drs. Rutherford and Asika. (R. 17, 20-22). The ALJ is not required to discuss all evidence nor refer to every physical observation. *White*, 2009 U.S. Dist. LEXIS 60309, at *11-12, 2009 WL 2135081, at *4; *see also Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) (explaining there "is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision"). Rather, the ALJ must "provide [this court] with sufficient reasoning for determining that the proper

legal analysis has been conducted." *Keeton v. Dept. of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994); *see also Coffman*, 829 F.2d at 517.

Here, with respect to Dr. Rutherford's medical records, the ALJ acknowledged Claimant's treatment for her vision by Dr. Rutherford (as well as treatment records by Dr. Redding, who also treated Claimant's vision). As noted in the court's severity discussion above, the ALJ's discussion of Claimant's vision records were adequate. To the extent Claimant contends the expertise of a medical source is required to interpret Dr. Rutherford's notes, it was Claimant's responsibility, and not the ALJ's, to obtain the required documentation, especially in light of the fact that Claimant never mentioned any impairment regarding her vision during the administrative hearing. The ALJ also discussed specifically the 2009 records of Dr. Asika, noting diagnoses of vertigo secondary to otitis media and TMJ dysfunction. (R. 22, 458). As for Dr. Asika's progress notes dated 2006 through 2008, while not discussed by the ALJ, the ALJ nevertheless cited numerous records during that time period by treating physicians to whom Dr. Asika referred Claimant for treatment of her sarcoidosis and related symptoms, neck pain, pulmonary issues and carpal tunnel syndrome, including Q.A. Thai, M.D. (R. 448-450), Jessica Gorr, D.O. (R. 446), Jasvinder Singh, M.D. (R. 442-44), Kimberly Cerveny, M.D. (R. 437, 439-40) and Michael Sue, M.D. (R.470-71). (R. 21). This evidence was sufficient on which to make findings regarding Claimant's impairments.

In this case, Claimant has not shown that the record before the ALJ was insufficient for the ALJ to make an RFC finding. The ALJ is required to look beyond the evidence submitted only when the evidence is insufficient upon which to make an informed decision. 20 C.F.R. §§ 404.1512(e), 416.912(e). The instant record contains the evidence submitted by Claimant and is cited by the ALJ throughout his decision. As mentioned earlier, Claimant's counsel presented no new evidence during

26

the hearing. Furthermore, counsel did not identify any issues requiring further development nor did he request any medical opinions or medical summaries. *See Hawkins*, 113 F.3d at 1167 ("[I]n a counseled case, the ALJ may ordinarily require counsel to identify the issue or issues requiring further development."). The ALJ extensively questioned Claimant at the hearing concerning her medical conditions, her subjective allegations of pain, her daily activities and her functional limitations. (R. 30-43). In fact, during the administrative hearing, the ALJ asked Claimant three times whether any other medical problems or symptoms, in addition to sarcoidosis, affected Claimant's ability to work. (R. 36-38). The questioning by Claimant's counsel and the ALJ during the administrative hearing provided sufficient supplemental evidence to complete the record and provided adequate information upon which the ALJ could base his findings. The ALJ's evaluation of the evidence included a discussion of Claimant's subjective complaints, the medical record and other relevant evidence in assessing Claimant's RFC, including two RFC assessments by the reviewing state agency physicians. (R. 23, 332-39, 428-35). In fact, upon reviewing the entire record, the ALJ accorded the state agency RFC assessments wherein Claimant was found capable of medium work "little weight," noting the state agency consultants "did not give sufficient consideration to the claimant's symptoms and clinical abnormalities." (R. 23). Accordingly, the court finds Claimant's argument as to this issue meritless.

**V. Claimant's Request for Oral Argument**

Claimant submits that oral argument would assist in the court's decision of this case. Pl.'s Mem. at 18. Generally, motions are determined without a hearing. Local Civil Rule 7.1(I). While hearings may be ordered by the court in it its discretion, no deviation from the local rule is warranted in this case. Accordingly, this court recommends Claimant's motion for an oral hearing be DENIED.

27

## CONCLUSION

For the reasons stated above, this court RECOMMENDS Claimant's request for oral argument be DENIED, Claimant's Motion for Judgment on the Pleadings be DENIED, Defendant's Motion for Judgment on the Pleadings be GRANTED and the final decision of the Commissioner be UPHELD.

The Clerk shall send copies of this Memorandum and Recommendation to counsel for the respective parties, who have fourteen (14) days upon receipt to file written objections. Failure to file timely written objections shall bar an aggrieved party from receiving a de novo review by the District Court on an issue covered in the Memorandum and Recommendation and, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions not objected to, and accepted by, the District Court.

This, the 4th day of October, 2010.

Robert B. Jones, Jr.
United States Magistrate Judge

28