IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
NORTHERN DIVISION

NO. 2:10-CV-5-FL

| | |
|---|---|
| PAULA FELTON-MILLER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | ORDER |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

This matter is before the court on the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure (DE ## 31, 33). Pursuant to 28 U.S.C. § 636(b)(1), United States Magistrate Judge Robert B. Jones, Jr., entered a memorandum and recommendation ("M&R") wherein he recommended that the court deny plaintiff's motion, grant defendant's motion, and uphold the Commissioner's final decision (DE # 35). Plaintiff timely objected to the M&R, and defendant responded. In this posture, the issues raise are ripe for ruling. For the reasons that follow, the court adopts in full the findings and conclusions of the magistrate judge, and upholds the final decision of the Commissioner.

## STATEMENT OF THE CASE

Plaintiff filed applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") on July 10, 2006, and August 7, 2006, alleging disability beginning July 10, 2006. Plaintiff's claims were denied initially and upon reconsideration. On February 25, 2009, plaintiff appeared before an administrative law judge ("ALJ"). At this hearing, plaintiff was represented by counsel, and a vocational expert ("VE") appeared and testified. On March 18, 2009,

the ALJ issued a decision denying plaintiff's applications. On January 19, 2010, the Appeals Council denied plaintiff's request for review, thereby establishing the ALJ's determination as the final decision of the Commissioner.

On February 11, 2010, after her request to proceed *in forma pauperis* was allowed, plaintiff filed complaint in this court seeking review of the Commissioner's final decision. Defendant answered on April 1, 2010. Plaintiff moved for judgment on the pleadings on June 11, 2010, and defendant followed suit on August 6, 2010. The matter was referred to the magistrate judge, who entered his M&R on October 4, 2010. Plaintiff timely objected to the M&R on October 21, 2010, and defendant responded on November 3, 2010.

### DISCUSSION

A. Standard of Review

The court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3) to review the Commissioner's denial of benefits. The court must uphold the factual findings of the ALJ "if they are supported by substantial evidence and were reached through application of the correct legal standard." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996). "Substantial evidence is . . . such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quotations omitted). The standard is met by "more than a mere scintilla of evidence but . . . less than a preponderance." Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966).

To assist it in its review of the Commissioner's denial of benefits, the court may "designate a magistrate judge to conduct hearings . . . and to submit . . . proposed findings of fact and recommendations for the disposition [of the motions for judgment on the pleadings]." 28 U.S.C.

2

§ 636(b)(1)(B). The parties may object to the magistrate judge's findings and recommendations, and the court "shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." Id. § 636(b)(1)(C). Absent a specific and timely filed objection, the court reviews only for "clear error," and need not give any explanation for adopting the M&R. Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005); Camby v. Davis, 718 F.2d 198, 200 (4th Cir.1983). Upon careful review of the record, "the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C).

B.  Analysis

The ALJ's determination of eligibility for Social Security benefits involves a five-step sequential evaluation process, which asks whether:

> (1) the claimant is engaged in substantial gainful activity; (2) the claimant has a medical impairment (or combination of impairments) that are severe; (3) the claimant's medical impairment meets or exceeds the severity of one of the impairments listed in [the regulations]; (4) the claimant can perform her past relevant work; and (5) the claimant can perform other specified types of work.

Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (citing 20 C.F.R. § 404.1520). The burden of proof is on the claimant during the first four steps of the inquiry, but shifts to the Commissioner at the fifth step. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995).

In this case, the ALJ determined at step one that plaintiff was no longer engaged in substantial gainful employment. At step two, the ALJ determined that plaintiff's sarcoidosis, carpal tunnel syndrome, degenerative disc disease, vertigo, and depressive disorder were severe impairments. At step three, the ALJ found that these impairments, either individually or in combination, did not meet or medically equal a listed impairment. The ALJ found that claimant had

the residual functional capacity ("RFC") to perform light work involving simple, routine, and repetitive tasks, so long as that work did not involve constant use of the hands, exposure to workplace hazards, exposure to excessive dust and other respiratory irritants, or temperature extremes. At step four, the ALJ concluded that the RFC would not allow plaintiff to return to past relevant work. But at step five, the ALJ concluded that plaintiff's RFC would allow her to be employed in other positions existing in significant numbers in the national economy.

Plaintiff contended that the ALJ erred by (1) failing to classify her eye impairments and tigeminal neuralgia as severe impairments, (2) failing to properly apply the "special technique" for evaluating mental impairments, (3) improperly assessing the credibility of plaintiff's testimony regarding the severity of her pain, and (4) failing to seek a medical source opinion to further develop the record. The magistrate judge did not find merit in any of these arguments and recommends upholding the ALJ's decision. Plaintiff objects to the magistrate judge's analysis and recommended disposition of each of these arguments.

1.  Severity of Plaintiff's Visual Impairment

In her motion, plaintiff contends that the ALJ erred in finding that plaintiff's visual impairments were not "severe." The magistrate judge rejected this argument, noting that plaintiff did not testify to any visual impairment at the hearing when asked by the ALJ to identify all impairments affecting her ability to work, that there was no evidence indicating that these impairments affected her ability to work, and that the ALJ is not required to cite every medical record in engaging in his analysis. In her objection to the M&R, plaintiff re-casts her argument as one challenging the ALJ's failure to supplement the record by failing to obtain an opinion from plaintiff's treating physician regarding her visual impairments.

4

A severe impairment is one which significantly limits the claimant's ability to do basic work activities. 20 C.F.R. § 404.1520(c). Establishing that an impairment is severe is not a difficult burden for a claimant to meet, so long as the impairment is more than a slight abnormality having a minimal effect on the claimant that could not be expected to interfere with work activities. See Albright v. Comm'r of the Soc. Sec. Admin., 174 F.3d 473, 474 n.1 (4th Cir. 1999). But while this burden may be minimal, it does require the claimant to put forward at least some suggestion that the impairment exists and affects the claimant's ability to work. See Domingue v. Barnhart, 388 F.3d 462, 463 (5th Cir. 2004) (per curiam) (upholding the ALJ's finding that claimant's depression was not severe where the claimant did not contend that depression was an impairment at the administrative level and did not point the district court or court of appeals to any evidence indicating that depression affected her ability to work).

Here, plaintiff did not allege any limitation on her ability to do work based on any visual impairment and did not testify to any visual difficulties, and the ALJ correctly noted that the record did not contain any evidence that would support any such finding. Absent any indication of a severe impairment, the ALJ did not have a further duty to discover if such impairments existed and affected plaintiff's ability to work. See Bell v. Chater, 57 F.3d 1065, 1995 WL 347142 at *4 (4th Cir. June 9, 1995) (unpublished table decision) ("Although the ALJ has a duty to explore all relevant facts and inquire into the issues necessary for adequate development of the record, he is not required to function as the claimant's substitute counsel, but only to develop a reasonably complete record." (internal quotation marks, alterations, and citations omitted)). Moreover, neither in her motion for judgment on the pleadings nor in her objections to the M&R has plaintiff even alleged that any visual problem affected her ability to work, let alone point to any evidence supporting such an allegation.

5

As such, the magistrate judge's analysis and recommendation to uphold the ALJ's determination that plaintiff's visual impairments are not "severe" are without error.

2.  Special Technique for Mental Impairments

In her motion, plaintiff argues that the Commissioner and the ALJ failed to apply the "special technique" for evaluating the severity of mental impairments at each level of the administrative process as required by 20 C.F.R. § 404.1520a. The magistrate judge rejected plaintiff's arguments. The magistrate judge noted that the Commissioner was not faced with any evidence of a mental impairment in the record during the initial review or reconsideration of plaintiff's claim, and concluded that the ALJ properly evaluated plaintiff's mental status and followed the required guidelines at the hearing stage. In her objections, plaintiff concedes that the Commissioner did not err in failing to apply the special technique at the initial review and reconsideration stages, and only challenges the ALJ's performance. She argues that the ALJ erred by failing to prepare or have prepared a psychiatric review technique ("PRT") form, failing to support his findings regarding the special technique, failing to document use of a mental RFC assessment form, and failing to consult a medical expert in making his findings.

The regulations require the ALJ to use a particular procedure, known as the "special technique," to evaluate the severity of mental impairments at the second and third steps of the five-step sequential process. See 20 C.F.R. § 404.1520a(a); Rabbers v. Comm'r of the Soc. Sec. Admin., 582 F.3d 647, 652 (6th Cir. 2009); Kohler v. Astrue, 546 F.3d 260, 265 (2d Cir. 2008) (citing Schmidt v. Astrue, 496 F.3d 833, 844 n.4 (7th Cir. 2007)). The ALJ "must first evaluate [the claimant's] pertinent symptoms, signs, and laboratory findings to determine whether [he or she] ha[s] a medically determinable mental impairment(s)." 20 C.F.R. § 404.1520a(b)(1). The ALJ must "then

rate the degree of functional limitation resulting from the impairment(s)" in four broad functional areas. Id. § 404.1520a(b)(2), (c). The ALJ must document the application of the technique in the hearing decision, incorporating pertinent findings and conclusions and documenting the significant history and functional limitations that were considered. Id. § 404.1520(e)(2).

In this case, the ALJ did not explicitly invoke the "special technique" at steps two or three of the five-step sequential process. Nevertheless, at step two the ALJ found plaintiff's depressive disorder to be a severe impairment. At step three, he listed the four functional areas (the "paragraph B criteria" or "B criteria") and rated the degree of functional limitation in these areas caused by plaintiff's mental impairment, as required by the special technique.[1] Although the ALJ did not document the relevant medical evidence upon which he relied in reaching those ratings at step three, a summary of that evidence is given in analyzing the RFC.

In Richards v. Astrue, 370 F. App'x 727 (7th Cir. 2010) (unpublished), a case involving a strikingly similar situation, the Seventh Circuit remanded to the ALJ, noting:

> The ALJ nowhere mentioned that she was applying the [special] technique, and although the ALJ happened to assign [the claimant] a rating in each of the four functional categories, she did this at step three of her five-step analysis (not at step two, as the technique requires) and did not explain how she had reached her conclusions. The ALJ did recount some of [the claimant's] mental-health history in the RFC analysis, but we have cautioned that the RFC analysis is not a substitute for the special technique, even though some of the evidence considered may overlap.

Id. at 730. The Seventh Circuit further recognized that "failure to explicitly use the special technique may be harmless error, but here . . . the ALJ's misstep is compounded by other errors in her analysis." Id.

---

[1] These criteria are set forth in paragraph B of the listing for affective disorders such as depression. See 20 C.F.R. Pt. 404 Subpt. P App. 1 § 12.04B. Based on the severity of these paragraph B criteria, the rating of which is guided by the special technique, the ALJ found that plaintiff did not meet or medically exceed Listing 12.04.

7

Unlike the Seventh Circuit in Richards, this court believes that the ALJ's failure to explicitly mention the "special technique" at steps two or three in the instant case was harmless. Even absent use of the special technique at step two, "the ALJ . . . concluded that [plaintiff] had a severe mental impairment and proceeded to step three, which was all [plaintiff] could have asked for." Rabbers, 582 F.3d at 658. At step three, the ALJ properly referenced each of the B criteria, and his decisions with regard to these criteria are supported by the ALJ's later recitation of plaintiff's lessening symptoms of depression and positive response to treatment. Moreover, there is no indication from the record that plaintiff's impairments with respect to the B criteria meet or medically exceed the relevant listing. Given these circumstances, this court will not remand for further proceedings.

Plaintiff's objections regarding the ALJ's failure to have a PRT form completed and failure to consult a medical expert in making his findings are without merit. Nothing in the regulations requires an ALJ to complete a PRT form. See 20 C.F.R. § 404.1520a; see also Kohler, 546 F.3d at 266 ("[T]he regulations no longer require the ALJ to complete [the PRT] form . . . ."); Godbey v. Apfel, 238 F.3d 803, 810 (7th Cir. 2000) ("[U]nder revised regulations that took effect on September 20, 2000, the ALJ is no longer required to complete the [PRT form]."). Even in a case where "the issue of mental impairment first [arises] before the ALJ," there is no requirement to have the PRT form completed, and the provision in the regulations allowing the ALJ to remand the matter to obtain assistance in evaluating the mental impairment is "discretionary rather than mandatory if the services of a medical expert are needed." Kennedy v. Astrue, No. 5:08-CV-11-FL, 2009 WL 605315 at *2-3 (E.D.N.C. Mar. 9, 2009); see also Plummer v. Apfel, 186 F.3d 422, 433 (3d Cir. 1999).

Moreover, plaintiff has not provided a citation for her argument that the ALJ is required to document use of a mental RFC assessment form, and the court is unaware of any. At the RFC stage,

the ALJ found that plaintiff was further limited to performing only simple, routine, repetitive tasks by her decreased ability to concentrate on and attend to work tasks. Thus it is unclear what substantive error the ALJ is alleged to have made with respect to plaintiff's mental impairment at the RFC stage of the five-step sequential process.[2] Finding no error, the court upholds the ALJ's analysis of plaintiff's mental impairments over plaintiff's objection.

    3.    The ALJ's Credibility Determination

An ALJ employs a two-step process in evaluating the intensity, persistence, and limiting effects of symptoms on a claimant's ability to perform basic work. See Craig, 76 F.3d at 594; SSR 96-7p, 1996 WL 374186 at *2 (July 2, 1996). "First, the ALJ must determine whether medically determinable mental or physical impairments can produce the symptoms alleged. Second, the ALJ must evaluate the claimant's testimony about his subjective experiences." Fisher v. Barnhart, 181 F. App'x 359, 363 (4th Cir. 2006) (per curiam) (citing Craig, 76 F.3d at 591-96). The ALJ must consider the entire record in making its determination. 20 C.F.R. § 404.1529(c); SSR 96-7p, 1996 WL 374186 at *4. In addition to the objective medical evidence, the ALJ must consider certain enumerated factors, such as the effect of symptoms on the claimant's daily life activities. 20 C.F.R. § 404.1529(c)(3). "The reasons for the [ALJ's] credibility finding must be grounded in the evidence and articulated in the determination or decision." SSR 96-7p, 1996 WL 374186 at *4.

The ALJ properly engaged in this two-step analysis, but plaintiff argues in her objection to the M&R that the ALJ's reasons for discrediting her testimony at the second step were insubstantial.

---

[2] Two points suggest the need for further clarification. First, the ALJ correctly noted that he was obligated to perform a separate assessment of plaintiff's mental RFC beyond the evaluation of the B criteria at steps two and three, see SSR 96-8p, 1996 WL 374184 at *4 (July 2, 1996), and then adequately performed this separate assessment. Second, plaintiff's citation to Smith v. Barnhart, 395 F. Supp. 2d 298 (E.D.N.C. 2008) for the proposition that the ALJ was required to develop the record to perform the RFC in this case is misplaced. Smith involved a *pro se* claimant. Plaintiff in this case was represented by counsel, and the court cannot say that the evidence before the ALJ was "so inadequate" as to require further development by the ALJ. See id. at 301.

9

Case 2:10-cv-00005-FL   Document 38   Filed 11/17/10   Page 9 of 11

Specifically, plaintiff argues that a finding at first step of the Craig analysis that a medically determinable impairment that could produce plaintiff's pain establishes a "presumption" of credibility that must be overcome by specific evidence at the second step. Plaintiff argues that the ALJ (and the magistrate judge on review) failed to cite evidence to overcome this presumption, disagreeing with the ALJ's finding that plaintiff's pain was well-controlled with medication, that plaintiff's carpal tunnel syndrome and degenerative disc disease were mild, and that plaintiff had not required certain aggressive measures for pain relief.

Plaintiff is incorrect that the first step of the Craig inquiry establishes any "presumption" of credibility. The first step is merely a "threshold . . . showing by objective evidence of the existence of a medical impairment which could reasonably be expected to produce the actual pain, in the amount and degree, alleged by the claimant." Craig, 76 F.3d at 594 (internal quotation marks omitted). The court in Craig took care to point out that "[t]his threshold test does not . . . entail a determination of the intensity, persistence, or functionally limiting effects of the claimant's asserted pain" and that "the pain claimed is not directly at issue" at this first step. Id. (internal quotation marks omitted). Further emphasizing that the two steps of an ALJ's analysis of pain and other symptoms are completely separate inquiries, the court stated:

> It is only after a claimant has met her threshold obligation of showing by objective medical evidence a medical impairment reasonably likely to cause the pain claimed, that the intensity and persistence of the claimant's pain, and the extent to which it affects her ability to work, must be evaluated. Under the regulations, this evaluation must take into account not only the claimant's statements about her pain, but also 'all the available evidence,' including the claimant's medical history, medical signs, and laboratory findings; any objective medical evidence of pain (such as evidence of reduced joint motion, muscle spasms, deteriorating tissues, redness, etc.); and any other evidence relevant to the severity of the impairment, such as evidence of the claimant's daily activities, specific descriptions of the pain, and any medical treatment taken to alleviate it.

Craig, 76 F.3d at 595 (emphasis in original; internal citations omitted).

With this standard in mind, the court's *de novo* review indicates that substantial evidence supports the ALJ's credibility determination. See Johnson, 434 F.3d at 658 (noting that the court "cannot make credibility determinations," but only may review whether substantial evidence supports the ALJ's assessment). The ALJ found that plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but that plaintiff's statements concerning the intensity, persistence, and limiting effects of these symptoms were not entirely credible. The ALJ offered a detailed analysis at the second step, and his conclusion finds substantial support in the record evidence despite plaintiff's arguments to the contrary. It is not this court's province to second guess the ALJ's well-supported determination. See Mickles v. Shalala, 29 F.3d 918, 929 (4th Cir. 1994) (Luttig, J., concurring).

## CONCLUSION

For the foregoing reasons, upon *de novo* review of those portions of the magistrate judge's M&R to which specific objections have been filed, and upon a considered review of the uncontested portions of the M&R, the court ADOPTS in full the findings and recommendations of the magistrate judge (DE # 35) as its own. Plaintiff's motion for judgment on the pleadings (DE # 31) is DENIED, and defendant's motion for judgment on the pleadings (DE # 33) is GRANTED. The final decision of the Commissioner is upheld. The Clerk is DIRECTED to close this case.

SO ORDERED, this the 17th day of November, 2010.

LOUISE W. FLANAGAN
Chief United States District Judge